# KASOWITZ LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

Daniel J. Fetterman
Direct Dial: (212) 506-1934
DFetterman@Kasowitz.com

Atlanta
Houston
Los Angeles
Miami
Newark
San Francisco
Silicon Valley
Washington DC

June 1, 2026

**VIA EMAIL**

Paul M. Monteleoni
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
Jacob K. Javits Federal Building
26 Federal Plaza, 37th Floor
New York, New York 10278
paul.monteleoni@usdoj.gov

   Re:  *United States v. Guan*, No. 24-cr-0322

Dear Paul:

  We were recently retained by Mr. Weidong ("Bill") Guan, and write on his behalf in connection with the above-captioned action to (i) ascertain whether the United States government ("Government") through the agencies described below possesses any classified or other intelligence information that is helpful or material to Guan's defense; (ii) if so, that it promptly produce such information pursuant to the Classified Information Procedures Act ("CIPA") and Rule 16(a); and (iii) if not, that the Government promptly conduct the diligence necessary to fulfill its obligations.

  As you know, Guan is a long-time practitioner of Falun Gong, a spiritual movement that has been designated as an enemy of the state by the People's Republic of China ("PRC") and the Chinese Communist Party ("CCP").  Mr. Guan also was a senior leader at *The Epoch Times*, a global publication that is closely affiliated with Falun Gong, and which is identified as an enemy of the PRC, the CCP, and their hostile intelligence agencies.  The Government made clear that the PRC and CCP have persecuted practitioners of Falun Gong as part of a systematic campaign to

KASOWITZ LLP

Paul M. Monteleoni
June 1, 2026
Page 2

eradicate the movement.[1]  To that end, as has been widely documented in Congressional testimony and in publicly broadcast and published news reports, PRC and CCP agents have surveilled, intimidated, and harassed dissidents living abroad, including Falun Gong adherents like Guan.[2]

It is also well-known that the Government conducts extensive counter-surveillance on the PRC and CCP agents' activities in the United States, and has investigated and prosecuted these forms of transnational repression by the PRC, including in this District.  *See, e.g., United States v. John Chen*, No. 23-cr-00286 (S.D.N.Y.) (two individuals convicted for bribery scheme targeting Falun Gong); *United States v. Wang*, No. 22-cr-00230 (E.D.N.Y.) (defendant convicted for using his position within Chinese diaspora community to collect information on CCP dissidents and to convey the information to PRC); *United States v. Liu*, No. 22-cr-00311 (E.D.N.Y.) (defendants convicted for illegally collecting personal information and conducting surveillance on various CCP dissidents); *United States v. Jianwang*, No. 23-cr-00316 (E.D.N.Y.) (defendant convicted for operating clandestine "secret police station" in Manhattan's Chinatown on behalf of CCP and working under direction of Chinese police officials to monitor, locate, and intimidate Chinese dissidents living in U.S., including Falun Gong practitioners); *United States v. Lin*, No. 22-mj-00251 (E.D.N.Y.) (defendant convicted of working on behalf of CCP to disrupt the congressional bid of former U.S. Army chaplain who was participant in the 1989 Tiananmen Square protests); *United States v. Zhu*, No. 20-mj-01025 (E.D.N.Y.) (defendants directed by CCP agents to harass former PRC official and his families who lived in New Jersey); *United States v. Hu*, No. 21-cr-00265 (E.D.N.Y.)(same); *United States v. Li*, 24-cr-00334 (M.D. Fla.) (defendant, who worked for major U.S. telecommunications company and international IT company, worked at direction of CCP to obtain information concerning Chinese dissidents and prodemocracy advocates, members of Falun Gong religious movement, and U.S. based non-governmental organizations for more than ten years); *United States v. Sun*, No. 24-cr-00777 (C.D. Cal.) (defendant convicted for influencing U.S. politicians on issue of Taiwan and to promote activities against "anti-China forces" in U.S., including Falun Gong); *United States v. Wang*, No. 26-cr-00186 (C.D. Cal.) (defendant, at direction and control of PRC government officials and coordinated with U.S.-based individuals,

---

[1] *See, e.g.*, U.S. Dep't of Justice, *Illegal Agents of the PRC Government Charged for PRC-Directed Bribery Scheme*, https://www.justice.gov/archives/opa/pr/illegal-agents-prc-government-charged-prc-directed-bribery-scheme  (May 26, 2023) ("The PRC Government has designated the Falun Gong as one of the 'five poisons,' or one of the top five threats to its rule. In China, Falun Gong adherents face a range of repressive and punitive measures from the PRC government, including imprisonment and torture.").

[2] *See, e.g.,* House Committee on Homeland Security, *Countering Threats Posed by the Chinse Communist Party to U.S. National Security*, Mar. 5, 2025 Hr'g Tr. at 74, https://www.congress.gov/119/chrg/CHRG-119hhrg60878/CHRG-119hhrg60878.pdf ("The Chinese government also continues to suppress dissent outside of its borders through a range of coercive tactics, including surveillance, harassment, and even violence."); PBS, *Activist father of U.S. Olympian Alysa Liu targeted by Chinese spy ring*, https://www.pbs.org/newshour/politics/activist-father-of-u-s-olympian-alysa-liu-targeted-by-chinese-spy-ring (Mar. 17, 2022); Sebastian Rotella, *DOJ Charges Defendants With Harassing and Spying On Chinese Americans for Beijing*, PROPUBLICA, https://www.propublica.org/article/doj-charges-defendants-with-harassing-and-spying-on-chinese-americans-for-beijing (Mar. 17, 2022).

KASOWITZ LLP

Paul M. Monteleoni
June 1, 2026
Page 3

promoted the PRC's interests by, among other things, promoting pro-PRC propaganda in United States).

Based on the Government's previous prosecutions in the Southern District of New York alone, PRC agents targeted Falun Gong and related entities "with the ultimate goal of achieving the PRC Government's aim to topple the Falun Gong." *Chen*, No. 23-cr-00286, Dkt. No. 1 at 6–7 (S.D.N.Y.). Additionally, it is highly likely that the Government, through its own intelligence, counterintelligence, and law enforcement agencies, has implemented measures of its own to monitor and counter the threat that PRC agents pose here in the United States.[3]

Based on the public record and their own experiences, unsurprisingly, Falun Gong practitioners like Guan are acutely aware that they may be targets of hostile, state-sponsored actions, and that PRC and CCP agents may be actively monitoring dissidents like Guan through various multiple and comprehensive means, including by hacking their online accounts, wiretapping their phones, and tracking and interfering with their activities. In view of these threats from hostile state actors, we understand that Guan has been vigilant about concealing his activities from PRC surveillance. To the uninitiated observer, the countermeasures and related conduct that Guan has taken throughout his life in the U.S. may appear to be deceptive or otherwise inherently suspicious. But to those familiar with the PRC and CCP's tactics, Guan's precautions could be viewed by a jury as consistent with efforts to resist the threats and harm presented by the actions of hostile PRC and CCP agents. All of which would go to the element of *intent*, and which could by itself constitute a complete basis for "reasonable doubt" in the minds of one or more jurors.

We understand that the Government intends to prove its case through evidence that Guan engaged in illegal and suspicious conduct, including but not limited to moving alleged crime proceeds through thousands of layered transactions to conceal the allegedly unlawful origins of those funds. (*See* Indictment ¶¶ 3, 8.)

Moreover, we further understand that the Government's voluminous discovery, which demonstrates how it intends to prove the charges against Guan, has brought into focus just how critical it will be for Guan to demonstrate at trial, among other things, that conduct the Government contends is suspicious and/or illegal may have been taken by Guan to elude and obfuscate the very real threat of the PRC and CCP's ongoing efforts to track communications of – and otherwise

---

[3] Federal Bureau of Investigation, *The China Threat*, https://www.fbi.gov/investigate/counterintelligence/the-china-threat (last visited May 21, 2026); Sen. Rick Scott, *Sen. Rick Scott Leads CCP Influence Act to Crack Down on Adversarial Espionage in America*, https://www.rickscott.senate.gov/2025/5/sen-rick-scott-leads-ccp-influence-act-to-crack-down-on-adversarial-espionage-in-america (May 7, 2025); Federal Bureau of Investigation, *Chinese Government Poses 'Broad and Unrelenting' Threat to U.S. Critical Infrastructure, FBI Director Says*, https://www.fbi.gov/news/stories/chinese-government-poses-broad-and-unrelenting-threat-to-u-s-critical-infrastructure-fbi-director-says (Apr. 18, 2024).

KASOWITZ LLP

Paul M. Monteleoni
June 1, 2026
Page 4

harass and persecute – Chinese dissidents in the U.S.[4]  Any evidence tending to show that Guan could have engaged in this conduct to protect his own communications and financial activities of *The Epoch Times* from PRC and CCP interference, rather than for the nefarious or illegal purposes claimed by the Government, is highly material to his defense.

The undisputed fact that the United States and China have a high-stakes rivalry and engage in extensive intelligence and counterintelligence operations makes the existence of this evidence highly probable.  Given the PRC and CCP's very extensive reach into the United States, any evidence in the Government's possession, custody, and control assessing, documenting, and/or analyzing the PRC and CCP's state-sponsored efforts against Chinese dissidents, and in particular, Falun Gong members or *The Epoch Times* employees, including Guan, not only is relevant, but critical, to Guan's defense that his conduct was consistent with innocent and legitimate efforts to thwart the PRC and CCP's ongoing illegal surveillance, repression, and persecution of U.S.-based Chinese dissidents by destroying Falun Gong and/or *The Epoch Times*' continued existence in the United States.

Given Guan's longstanding dedication to Falun Gong, his history as a PRC dissident, and the PRC and CCP's explicit campaign to repress dissidents like him, it is highly likely that U.S. intelligence and law enforcement agencies possess critical evidence in this case that PRC and/or CCP agents actively monitored and targeted U.S.-based Chinese dissidents like *The Epoch Times* (or other employees of *The Epoch Times*), other Falun Gong members, and even Guan himself.  It also is likely that U.S. intelligence, counterintelligence, and law enforcement agencies may have been assessing, analyzing, and tracking the PRC and CCP's transnational activities against Falun Gong, *The Epoch Times*, and/or Guan.  Such evidence, whether or not classified, is highly material and relevant to explaining Guan's motives and conduct, and to establishing an alternative, innocent interpretation of evidence that the Government contends is suspicious and unlawful conduct by Guan.

As your Office appreciates, CIPA does not change the Government's discovery obligations and does not alter a defendant's substantive rights or the rules of evidence.  *See United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989); *United States v. Anderson*, 872 F.2d 1508, 1514 (11th Cir. 1989).  Rather, CIPA enables the Government to fulfill its duty to protect national security information and to comply with its discovery obligations in federal criminal prosecutions.  *See* S. Rep. No. 96823, 96th Cong., 2d Sess., at 3 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4296; *see also United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) (CIPA's purpose is to "harmonize a defendant's right to obtain and present exculpatory material upon his trial and the government's right to protect classified material in the national interest" (internal quotation marks and citation omitted));

---

[4] *See, e.g.*, *Li*, 24-cr-334 (M.D. Fla.), Indictment, Dkt. No. 1 at ¶¶ 4, 8, 13 (alleging that the PRC targeted the Falun Gong practitioners, including through a PRC agent who has infiltrated telecommunication companies in the United States); *Zhu*, 21-cr-00265 (E.D.N.Y.), Indictment, Dkt. No. 1 at ¶¶ 32, 34 (alleging that the PRC sought and obtained its targets' banking information and used such information to further their illicit activities).

KASOWITZ LLP

Paul M. Monteleoni
June 1, 2026
Page 5

*United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998) ("When classified materials may be relevant to criminal proceedings, [CIPA] provides procedures designed to protect the rights of the defendant while minimizing the harm to national security.").

And, as your Office and DOJ are also aware, evidence that is discoverable under CIPA is that which is possessed not only by your Office, but by those entities that have "contributed significantly to the investigation," and "are closely aligned with the prosecution." *United States v. Libby*, 429 F. Supp. 2d 1, 11 (D.D.C. 2006). In the Government's November 7, 2025, opposition to Guan's and Hung's pretrial motions, your Office acknowledged that "[t]he Federal Bureau of Investigation ("FBI") provided limited assistance in the first few weeks of the investigation" and "[f]rom February 2021 through the present, the case has been investigated by, and ultimately charged with the assistance of, the following investigating agencies: the U.S. Attorney's Office for the Southern District of New York ("USAO-SDNY"), the U.S. Department of Labor's Office of Inspector General ("DOL-OIG"), and the U.S. Department of State's Diplomatic Security Service ("DSS"). (Dkt. No. 104, at 1.) And, upon unsealing the Indictment, your Office along with DOL-OIG and DSS not only announced Guan's indictment, but highlighted that his prosecution was "part of an Organized Crime Drug Enforcement Task Forces operation."[5] OCDETF includes the following government agencies: the U.S. Department of Justice ("DOJ") including the U.S. Attorneys' Offices, DOJ's Criminal Division, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Drug Enforcement Administration ("DEA"), the U.S. Marshals Service ("Marshals Service"); the Department of Homeland Security ("DHS"), including the Immigration and Customs Enforcement ("ICE"), the U.S. Coast Guard ("Coast Guard") and U.S. Secret Service ("Secret Service"); the U.S. Department of the Treasury ("Treasury") including the Internal Revenue Service ("IRS"); the U.S. Postal Service ("Postal"), including the Postal Inspection Service ("PIS"), DOL, and DSS.[6] Given DOJ's announcements and public representations that Guan's prosecution was part of an OCDETF "operation," all of these agencies are either "closely aligned with" or "substantially involved" in this case. In addition, in the press release announcing the indictment, then-U.S. Attorney Damien Williams "thanked the U.S. Customs and Border Protection [("Customs")] for its valuable assistance."[7]

---

[5] U.S. Dep't of Justice, *Chief Financial Officer Of Multinational Media Company Charged With Participating In Scheme To Launder At Least $67 Million In Fraud Proceeds*, https://www.justice.gov/usao-sdny/pr/chief-financial-officer-multinational-media-company-charged-participating-scheme (Jun. 3, 2024).

[6] U.S. Dep't of Justice, *About OCDETF*, https://www.justice.gov/archives/ocdetf/about-ocdetf (updated Oct. 31, 2025). In addition, DOJ includes the National Security Division ("NSD") which works with prosecutors and intelligence agencies on, among other things, cyber intrusions of foreign governments and counterintelligence. Moreover, the NSA and CIA – in addition to the FBI and NSD – conduct extensive intelligence and counterintelligence operations.

[7] U.S. Dep't of Justice, *Chief Financial Officer Of Multinational Media Company Charged With Participating In Scheme To Launder At Least $67 Million In Fraud Proceeds*, https://www.justice.gov/usao-sdny/pr/chief-financial-officer-multinational-media-company-charged-participating-scheme (Jun. 3, 2024).

KASOWITZ LLP

Paul M. Monteleoni
June 1, 2026
Page 6

Accordingly, unless your Office already has done so, Guan hereby requests that pursuant to its obligations under *Brady, Giglio*, and Rule 16(a) it conduct a thorough search of the files of the agencies listed above, including but not limited to your Office, DOL-OIG, DSS, DOJ including other U.S. Attorneys' Offices, NSD, FBI, ATF, DEA, and the Marshals Service; DHS including ICE and Customs, the Coast Guard, and the Secret Service; Treasury including the IRS; the Postal Service including PIS; and produce all evidence under CIPA that is "helpful or material to the defense" of Guan. *United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008). Such evidence "need not rise to the level that would trigger the Government's obligation under *Brady* … to disclose exculpatory information" – it "can be helpful without being 'favorable' in the *Brady* sense." *Id*. And, as explained above, it would include, without limitation and among other things, any evidence, whether classified or unclassified, demonstrating that during the relevant period:

(i)      PRC and CCP agents were surveilling, monitoring, and intercepting communications of, and interfering with financial, journalistic, dissident, and other activities by, Falun Gong members in the U.S., including Guan and the leadership or other executives and colleagues at *The Epoch Times*;

(ii)     U.S. agencies have engaged in and continue to engage in counterintelligence operations – including but not limited to electronic monitoring, intercepting, and recording communications of PRC and CCP targets such as Guan, Falun Gong, and *The Epoch Times* – into transnational repression activities by PRC and CCP agents; and

(iii)    U.S. intelligence, counterintelligence, national security, and law enforcement agencies collected and maintained information regarding hostile PRC and CCP efforts targeting Falun Gong, *The Epoch Times*, and/or Guan, including records of such information.

Given the high likelihood that at least some of this evidence exists within the files of the agencies described above, and how material and relevant it is to Guan's defense, we respectfully request that your Office immediately confirm that it already has done so and take the necessary steps to search for and produce all such evidence, whether classified or unclassified, in accordance with CIPA and Rule 16(a).

# Kasowitz llp

Paul M. Monteleoni
June 1, 2026
Page 7

     Please let us know if you are available either tomorrow (June 2) or Wednesday (June 3) of this week to discuss this matter.

                        Sincerely,

                        */s/ Daniel J. Fetterman*

                        Daniel J. Fetterman


cc:     AUSA Amanda Weingarten
          AUSA Benjamin Burkett
          AUSA Rebecca Dell
          Guy Petrillo, Esq.
          Kevin Puvalowski, Esq.
          Timothy Parlatore, Esq.
          Edward E. McNally, Esq.
          Ann M. St. Peter-Griffith, Esq.
          Brian S. Choi, Esq.