

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 9, 2026

**BY EMAIL**

Guy Petrillo, Esq.
Kevin R. Puvalowski, Esq.
Daniel J. Fetterman, Esq.
Edward E. McNally, Esq.
Brian S. Choi, Esq.
gpetrillo@pkbllp.com
kpuvalowski@pkbllp.com
emcnally@kasowitz.com
dfetterman@kasowitz.com
bchoi@kasowitz.com

Timothy Parlatore, Esq.
timothy.parlatore@parlatorelawgroup.com

Re:    *United States v. Weidong Guan and Le Van Hung*, 24 Cr. 322 (VM)

Dear Counsel:

The Government writes in response to defendant Weidong Guan's June 1, 2026 letter (the "Guan Letter"), and defendant Le Van Hung's June 5, 2026 letter (the "Hung Letter," and, collectively with the Guan Letter, the "Letters").[1]  In the Guan Letter, Guan requests that the Government search the files of over a dozen federal agencies, far beyond the prosecution team that is on this case, for certain alleged information. (Guan Letter at 6).  In the Hung Letter, Hung joins Guan's request and separately requests that the Government also search the files of "the Central Intelligence Agency, the Office of the Director of National Intelligence, and any other relevant Intelligence Community component" for ten categories of alleged information.  (Hung Letter at 9).  The Letters also request that the Government confirm whether it has already conducted such searches.  For the reasons stated below, under settled law, neither of the Letters has come close to identifying materials—to the extent they even exist—that the prosecution team is required to seek in this case.

*First*, at the outset, the Government notes that it is aware of its disclosure obligations, including those arising under Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and *Giglio v. United States*, 405 U.S. 150 (1972) and its progeny.  The

---

[1] Nothing in this letter should be understood as confirmation or denial that any classified information exists or does not exist, nor should it be construed as a confirmation or denial that the prosecution team is or is not aware of any such alleged information.

Page 2

Government has complied with (and indeed, exceeded) those obligations, and will continue to do so, irrespective of whether you specifically request particular information or how you may characterize any information that you request.  Moreover, the Government is not required to disclose to the defendants how it has complied with its discovery obligations, including whether it has conducted a prudential search review of allegedly extant classified information.  *See United States v. Gomez*, 199 F. Supp. 3d 728, 751-52 (S.D.N.Y. 2016) ("No more is required" when the Government has acknowledged its discovery obligations and confirmed it will comply with them.), *aff'd*, 751 F. App'x 63 (2d Cir. 2018); *United States v. Hossain*, No. 19 Cr. 06 (SHS), 2020 WL 6874910, at *4 (S.D.N.Y. Nov. 23, 2020) (same), *aff'd*, No. 22-618-CR, 2024 WL 4212321 (2d Cir. Sept. 17, 2024).

*Second*, although the Letters seek materials from over a dozen federal agencies and the intelligence community (Guan Letter at 5-6; Hung Letter at 9), they fail to come close to establishing that the information sought, if any exists, is "within the government's possession, custody, or control."  Fed. R. Crim. P. 16(a)(1)(E).  As the Second Circuit has held, the Government's discovery obligations extend only to "information known to persons who are a part of the 'prosecution team' . . . who perform investigative duties or make strategic decisions about the prosecution of the case," including "police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation."  *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (quoting *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006)); *United States v. Gupta*, No. 23 Cr. 289 (VM), 2025 WL 2463631, at *1 (S.D.N.Y. Aug. 27, 2025) ("[T]he Government's discovery obligations extend to information known to the prosecutor and others who can be considered members of the prosecution team."); *United States v. Avenatti*, No. 19 Cr. 374 (JMF), 2022 WL 457315, at *9 (S.D.N.Y. Feb. 15, 2022) ("[I]n the Second Circuit, a prosecutor's constructive knowledge only extends to those individuals who . . . are an arm of the prosecutor or part of the prosecution team."); *United States v. Meregildo*, 920 F. Supp. 2d 434, 441 (S.D.N.Y. 2013) ("The prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation."), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015).  In short, under black letter law, the prosecution team in this case consists only of the individual attorneys and agents who have worked on this investigation.

The mere fact that the Federal Bureau of Investigation ("FBI") provided limited assistance in the first few weeks of the investigation, and years before charges were brought, does not mean that any member of the FBI is part of the prosecution team, much less the FBI writ large.  Nor do the facts that the investigation was designated an Organized Crime Drug Enforcement Task Force operation (as numerous cases were, and was principally a funding mechanism, not a way of staffing a matter), or that it received assistance from the U.S. Customs and Border Protection mean that the anyone at these entities is part of the prosecution team, much less the entities as a whole.  Instead, "[c]ourts have been careful to impose the disclosure obligations created by Rule 16(a)(1) only on government attorneys and law enforcement officials actually involved in the prosecution or investigation of a particular case."  *United States v. Attanasio*, No. 03 Cr. 1382 (NGG), 2005 WL 8153622, at *2 (E.D.N.Y. Sept. 9, 2005); *see also Meregildo*, 920 F. Supp. 2d at 443-44 ("[E]ven when agents are involved in the investigation, they are not always so integral to the prosecution team that imputation is proper.  Interacting with the prosecution team, without more, does not make someone a team member."); *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir. 1971) (rejecting the "untenable position" that a Florida prosecutor's knowledge of certain evidence can be imputed to an AUSA in New York); *Gist v. United States*, 16 Cr. 656 (GHW), 2021 WL

Page 3

3774289, at *17 (S.D.N.Y. Aug. 24, 2021) (holding that the fact that individuals "fall under the broad umbrella of the Department of Justice" does not thereby render them part of a same prosecution team); *United States v. Volpe*, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) ("Courts have construed the term 'government' in this rule narrowly to mean the prosecutors in the particular case or the governmental agencies jointly involved in the prosecution of the defendant, and not the 'government' in general.").

More generally, the intelligence community is not part of the prosecution team in this case, which is a criminal matter, not an intelligence matter.  To be sure, the agencies cited in the Letters are federal agencies, just as the U.S. Attorney's Office for the Southern District of New York, and the two agencies from which personnel have assisted with the case after the first several weeks, U.S. Department of Labor's Office of Inspector General ("DOL-OIG"), and the U.S. Department of State's Diplomatic Security Service ("DSS"), are federal agencies.[2]  But, as described above, the Second Circuit has "long rejected the notion that knowledge of any part of the government is equivalent to knowledge on the part of the prosecutor."  *United States v. Hunter*, 32 F.4th 22, 36 (2d Cir. 2022).  *See also United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("[T]he imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis."); *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) ("Clearly the government cannot be required to produce that which it does not control and never possessed or inspected."); *United States v. Alexandre*, No. 22 Cr. 326 (JPC), 2023 WL 416405, at *12 (S.D.N.Y. Jan. 26, 2023) (the Government need not "produce documents from agencies that did not participate in the investigation of the defendant or documents of which it is unaware . . . .  In other words, the prosecutor is not required to conduct a separate investigation for the purpose of responding to a defendant's discovery request"); *United States v. Simmons*, No. 13-CR-6025CJS, 2016 WL 285176, at *17 (W.D.N.Y. Jan. 22, 2016) ("[E]ven if NSA were in possession of electronic communications of [the defendant]—a wholly speculative assertion—those communications are not subject to production" because the NSA was not part of the prosecution team.), *report and recommendation adopted*, No. 13 Cr. 6025, 2016 WL 1127802 (W.D.N.Y. Mar. 23, 2016); *United States v. Chalmers*, 410 F. Supp. 2d 278, 287, 289 (E.D.N.Y. 2006) (defendants not entitled to require government to search holdings of, among others, NSA and CIA because defendants failed to "establish that each of the [agencies] was part of the 'prosecution team'").

*Third*, neither of the Letters describes how the hypothetical information sought—even if it both existed and were deemed to be in the possession of the prosecution team—would be "material to preparing the defense" and thus fall within Rule 16.  Fed. R. Crim. P. 16(a)(1)(E)(i).  "In order to compel the Government to produce certain evidence, a defendant must make a *prima facie* showing of materiality, and must offer more than the conclusory allegation that the requested evidence is material."  *United States v. Abdalla*, 317 F. Supp. 3d 786, 790 (S.D.N.Y. 2018); *see also United States v. Finnerty*, 411 F. Supp. 2d 428, 431 (S.D.N.Y. 2006); *United States v. Rigas*, 258 F. Supp. 2d 299, 306-07 (S.D.N.Y. 2003).  That an item, if it exists, may be "useful" to the

---

[2] Neither DOL-OIG nor DSS is part of the intelligence community.  *See* Members of the IC, Office of the Director of National Intelligence, *available at* https://www.dni.gov/index.php/what-we-do/members-of-the-ic (listing the 18 organizations that are part of the intelligence community) (last visited June 9, 2026).

Page 4

defense does not render it "material" under Rule 16. *Rigas*, 258 F. Supp. 2d at 307. Rather, "[t]here must be some indication that the pretrial disclosure of the disputed evidence would . . . enable[] the defendant significantly to alter the quantum of proof in his favor." *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (citation omitted).

Indeed, neither of the Letters claims that the defendants contemporaneously knew of the information they seek—to the extent it even exists—much less knew of classified information allegedly in the possession of the intelligence community. Without such contemporaneous knowledge, the information they seek could not possibly "enable[] the defendant[s] significantly to alter the quantum of proof in [their] favor," *Maniktala*, 934 F.2d at 28, because information that the defendants did not know about could not impact their intent or conduct, *see United States v. Campos*, 763 F. App'x 97, 100 (2d Cir. 2019) (precluding a defense witness on the basis that "what [the defense witness] knew or believed sheds little, if any, light on what [the defendant] knew or believed"). And the defendants' rank speculation that it is "highly likely" that certain evidence exists within the U.S. intelligence community and law enforcement agencies (*see, e.g.*, Guan Letter at 4; Hung Letter at 8-9) does not permit the defendants to go on a fishing expedition into the files of agencies which are not part of the prosecution team, much less to fish for classified information. *See United States v. Neumann*, No. 21 Cr. 439 (NSR), 2022 WL 3445820, at *16 (S.D.N.Y. Aug. 17, 2022) ("Rule 16 does not entitle a criminal defendant to a broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up." (citation and internal quotation marks omitted)).

*Finally*, to the extent the defendants choose to seek alleged relief from the Court—as Hung has indicated he will do—the Government notes that the defendants' deadline for filing pretrial motions, including discovery motions, has long passed. *See* Dkt. 80 (setting pretrial motions deadline for October 22, 2025). Nor have the defendants even attempted to explain why they waited until weeks before trial to make their voluminous requests. Accordingly, any motion for discovery is waived.[3] *See, e.g.*, *United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003) (a failure to bring timely a motion required to be brought under Federal Rule of Criminal Procedure 12, which includes a discovery motion, constitutes a "complete" waiver, and "[a] strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely

---

[3] Although the Government's *Brady* obligations are continuing, regardless of any deadline imposed under Rule 12, "the *Brady* obligations of the prosecutors extend only to materials within prosecutors' possession, custody or control." *United States v. Blaszczak*, 308 F. Supp. 3d 736, 742 (S.D.N.Y. 2018). *See also Hunter*, 32 F.4th at 36 ("[U]ndisclosed information that is not known to anyone on [the prosecution team] does not give rise to a *Brady* violation."). Thus, even if it were fashioned solely as a motion seeking disclosure of *Brady* information, the defendants' motion would fail because, as explained above, it seeks information (if it exists) that is outside the possession, custody, or control of the prosecution team.

Page 5

consult with his client are all insufficient" to overcome such waiver); *United States v. Mustafa*, 753 F. App'x 22, 44 (2d Cir. 2018) (same, citing the amended Rule 12(c)(3)).

Very truly yours,

JAY CLAYTON
United States Attorney

By:   s/ _____
Rebecca T. Dell
Paul M. Monteleoni
Amanda C. Weingarten
Benjamin M. Burkett
Assistant United States Attorneys
(212) 637-2198/2219/2257/2455