UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA,

      -against-                           No. 24-cr-0322 (VM)

WEIDONG GUAN and LE VAN HUNG,

      Defendants.
--------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S
MOTIONS IN LIMINE ON BEHALF OF DEFENDANT LE VAN HUNG**

Timothy C. Parlatore
Parlatore Law Group, LLP
Attorneys for Le Van Hung
260 Madison Ave., 17th Floor
New York, New York 10016

# Table of Contents

*I. PRELIMINARY STATEMENT*...................................................................................... *1*

*II.    ARGUMENT* ............................................................................................................. *2*

    A. The Court Should Require the Government to Present Actual Certifications Before Ruling on Self-Authentication (Government's Motion, Section I) ........................................... 2

    B. The Court Should Not Issue a Blanket Ruling on Unidentified Alleged Co-Conspirator Statements (Government's Motion, Section II) ....................................................... 5

    C. Mr. Hung Opposes the Preclusion of Expert Testimony (Government's Motion, Sections III and IV).................................................................................................................. 8

    D. The Government's Motion to Preclude Advice-of-Counsel Arguments Is Moot as to Mr. Hung (Government's Motion, Section V).............................................................................. 8

    E. The Defense Is Entitled to Present Evidence of CCP Operations, Document Fabrication, and Mr. Hung's Beliefs and Motivations (Government's Motion, Section VI)..... 9

        1.    The Credibility of the Government's Evidence ............................................... 10

        2.    The CCP's Role in the Criminal Supply Chain ................................................ 12

        3.    CCP Exploitation of This Prosecution.............................................................. 14

        4.    Mr. Hung's Knowledge and State of Mind....................................................... 15

        5.    Proposed Safeguards......................................................................................... 18

*III.    CONCLUSION*.......................................................................................................... *20*

## I. PRELIMINARY STATEMENT

Defendant Le Van Hung respectfully submits this memorandum of law in opposition to the Government's Omnibus Motions in Limine (Dkt. 149). The Government's motion seeks nine categories of pretrial relief, several of which ask this Court to issue sweeping evidentiary rulings without the factual foundation necessary for meaningful judicial review.

Mr. Hung does not oppose the admission of properly authenticated documents on the basis of authentication. He stated this in his June 3, 2026 letter to the Court. (Dkt. 140.) But the Government's motion asks for something fundamentally different from what the Federal Rules of Evidence contemplate. On authentication, it asks the Court to deem 1,549 exhibits self-authenticating based on a spreadsheet, without presenting the actual certifications for judicial review. On co-conspirator statements, it asks for a blanket admissibility ruling without identifying a single statement, a single speaker, or a single exhibit number. These requests are procedurally deficient and should be denied without prejudice to renewal with proper support.

On the substantive motions, the Government seeks to preclude Mr. Hung from presenting evidence that goes to the heart of his defense. This prosecution targets a Falun Gong-affiliated entity and its practitioners. The Chinese Communist Party has codified "legal warfare" as official military doctrine and has designated Falun Gong as a primary target of that doctrine. CCP state media is actively exploiting this prosecution to advance the "evil cult" narrative against Falun Gong. The CCP's criminal apparatus likely placed the very gift cards at the center of this case onto the Paxful platform. And the Government's primary evidence of knowledge, the August 2020 complaint letter, bears the hallmarks of CCP fabrication, consistent with the precise conduct for which CCP agents were convicted in this District. The Government asks this Court to prevent the jury from hearing any of this. That request should be denied.

1

## II. ARGUMENT

### A. The Court Should Require the Government to Present Actual Certifications Before Ruling on Self-Authentication (Government's Motion, Section I)

Mr. Hung does not substantively oppose the authentication of exhibits supported by legally sufficient certifications under Federal Rules of Evidence 902(11) and 902(13). He has been consistent on this point. In his June 3, 2026 letter to this Court, Mr. Hung stated that he "will not oppose" a properly supported motion in limine to authenticate the Government's exhibits. (Dkt. 140 at 1-2.) He remains willing to stipulate that the Government's certifications are legally sufficient for purposes of the Federal Rules of Evidence. Mr. Hung is not demanding live custodians for every record. He is asking the Court to review the actual certifications before ruling.

What Mr. Hung cannot do, and what the Government demanded, is stipulate that the documents themselves are authentic and admissible as business records. The proposed stipulations the Government circulated went far beyond authentication. Government Exhibit 702, the Business Records Stipulation, asked Mr. Hung to stipulate not only that the listed exhibits are "true and accurate copies," but also that they are "records of regularly conducted activity" satisfying the business-records foundation under Rule 803(6), and to waive both Rule 901 authentication objections and Rule 802 hearsay objections. (GX 702 at 1-6.) Government Exhibit 707, the Websites Stipulation, similarly required waiver of both Rule 901 and Rule 802 objections and asked Mr. Hung to stipulate that blockchain transaction data is "regularly relied on by participants in the cryptocurrency industry." (GX 707 at 1-5.) These are not authentication stipulations. They are substantive evidentiary concessions that would foreclose Mr. Hung from challenging the admissibility of any covered exhibit on hearsay or business-records grounds.

In a case where the defense has specifically identified a document it believes was fabricated by the Chinese Ministry of State Security, the August 2020 complaint letter whose linguistic,

2

cultural, and forensic anomalies are detailed in Mr. Hung's pending CIPA § 4 motion (Dkt. 157), blanket authenticity concessions are incompatible with the defense's obligations to its client.

The Government's motion asks this Court to rule on the sufficiency of 1,549 certifications based on a 32-page spreadsheet listing items by entity, exhibit number, certification code, and rule reference. (Dkt. 149-1.) The motion does not attach or present a single certification for the Court's review. While the underlying certifications were produced in discovery, they vary significantly in formality and completeness, and at least one is facially deficient.

The need for judicial review is not hypothetical. By way of example, the JPMorgan Chase certification (GX 2B-CR10) states its business-records foundation entirely "upon information and belief" rather than on the personal knowledge of a custodian or qualified person. Rule 902(11) serves as a substitute for live testimony, allowing "a written foundation in lieu of an oral one." *United States v. Rom*, 528 F. App'x 24, 27 (2d Cir. 2013) (quoting *United States v. Adefehinti*, 510 F.3d 319, 325 (D.C. Cir. 2007)). A live witness could not lay a business-records foundation on "information and belief," and a written certification should not be able to either. The certifying person must have "knowledge of the origin of [the] records [and] of the manner in which they are kept or maintained." *Penzo v. Consolidated Edison Co. of N.Y.*, No. 24-2466-cv (Lead), slip op. at 4-5 (2d Cir. Apr. 2, 2026) (quoting *Mercado v. ChoYang Med. Co.*, No. 07-CV-3563, 2011 WL 13323649, at *2 (E.D.N.Y. Oct. 3, 2011)). The same certification also omits required Rule 803(6) elements, including the requirement that the records were made "by, or from information transmitted by, a person with knowledge" and that "making the record was a regular practice of that activity." For two of three record sets, the declarant did not personally extract the records and instead relies on unattached certifications from other JPMorgan employees. In *United States v. Nicolo*, 421 F. App'x 57, 66 (2d Cir. 2011), the Second Circuit held that failure to satisfy Rule

3

902(11)'s requirements means "the government failed to establish a proper foundation for the admission of Nicolo's business records into evidence." Yet the Government's spreadsheet lists this certification as supporting approximately forty exhibits under "Rule 902(11)/803(6)."

A legally sufficient certification must establish all three predicates of Rule 803(6)(A)-(C): that the record was made at or near the time of the occurrence by or from information transmitted by a person with knowledge, that the record was kept in the course of a regularly conducted activity, and that making the record was a regular practice of that activity. *See United States v. Komasa*, 767 F.3d 151, 154-56 (2d Cir. 2014). The purpose of Rule 902(11)'s notice requirement is to give the opponent "a fair opportunity to challenge" the foundation. *Id.* at 155. A blanket ruling based on an index, without judicial review of the certifications themselves, does not afford that opportunity. *See also United States v. Meislin*, 665 F. App'x 34, 39 (2d Cir. 2016) (approving authentication only because "the certification accompanying the notice accurately described the contents of the exhibits," providing the defendant "adequate time to investigate and challenge the adequacy of the underlying records" (quoting *Komasa*, 767 F.3d at 155)).

It is also important to distinguish authentication from admissibility. Even where a certification satisfies Rule 902(11) and authenticates a record, that ruling does not resolve whether the record is admissible. Authenticated records may still be subject to hearsay objections where the business-records exception does not apply, relevance challenges under Rule 401, unfair-prejudice balancing under Rule 403, or the trustworthiness proviso of Rule 803(6)(E). A pretrial authentication ruling should not be conflated with a ruling on full admissibility.

Mr. Hung respectfully requests that the Court direct the Government to present the actual certifications for judicial review, either by filing them or by presenting them at the final pretrial conference. Mr. Hung will then have a reasonable opportunity to identify any specific exhibits as

to which he has a genuine authenticity or trustworthiness objection. For the remainder, Mr. Hung will not oppose authentication.

**B. The Court Should Not Issue a Blanket Ruling on Unidentified Alleged Co-Conspirator Statements (Government's Motion, Section II)**

The Government asks this Court to rule, pretrial and in the abstract, that entire categories of out-of-court statements are admissible under Federal Rules of Evidence 801(d)(2)(E) and 801(d)(2)(D). The motion describes these categories in general terms, "statements concerning the MMO Team's progress, profitability, fraud complaints, account maintenance, and related concealment activity" (Dkt. 149 at 29-31), but does not identify a single specific statement, a single specific speaker, or a single exhibit number. The Court has no statement before it to evaluate.

This is not how the co-conspirator exception works. Under *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987), the Court must find, by a preponderance of the evidence, that (a) a conspiracy existed, (b) the declarant and the party against whom the statement is offered were members, and (c) the statement was made during the course of and in furtherance of the conspiracy. *See United States v. Gupta*, 747 F.3d 111, 126 (2d Cir. 2014). In making these findings, "the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself." *Id.*

The "in furtherance" requirement is inherently contextual and statement-specific. The Second Circuit has repeatedly held that "idle chatter," "casual conversation about past events," or a "merely narrative declaration" does not qualify. *United States v. Cotto*, No. 21-2791-cr, slip op. at 3-4 (2d Cir. Feb. 16, 2023) (quoting *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994)). Drawing that line requires examining the actual statement, its context, its audience, and its purpose. *See United States v. Saleh*, No. 19-2078-cr, slip op. at 2-3 (2d Cir. May 20, 2020) (evaluating three specific challenged statements individually for "in furtherance" requirement).

5

The government's failure to identify specific statements is particularly problematic because the "in furtherance" requirement demands context. A statement about the MMO Team's "progress" or "profitability" could be in furtherance of the conspiracy if made to coordinate ongoing criminal activity. Or it could be idle chatter between colleagues. The same words carry different legal significance depending on who said them, when, to whom, and why. Without knowing the specific statements, the Court cannot make this determination and Mr. Hung cannot meaningfully respond.

To be clear, Mr. Hung does not dispute that some alleged co-conspirator statements may ultimately prove admissible at trial. The Second Circuit permits conditional admission "subject to connection at trial . . . and review of the trial evidence." *United States v. Vidal*, No. 22-2857, slip op. at 10-11 (2d Cir. Feb. 2, 2024). But even that procedure requires a "concrete proffer," and the district court in *Vidal* ruled on the basis of specified categories of statements that the Government had actually identified. *Id.* at 10. The Second Circuit has confirmed that while courts need not "make particularized rulings or conduct separable analyses with respect to each coconspirator, much less each coconspirator statement," the court's findings must still be tied to "actual statements in the evidentiary record." *United States v. Coplan*, 703 F.3d 46, 96-97 (2d Cir. 2012).

Here, the Government has not provided a concrete proffer. It has not identified the declarants. It has not identified the statements. It has not provided exhibit numbers. The Court cannot determine whether unidentified statements by unidentified speakers satisfy the *Bourjaily* requirements, and Mr. Hung cannot meaningfully oppose what he has not seen.

Moreover, even if the Court were to resolve the hearsay question in the Government's favor as to particular statements, that ruling would address only one ground for objection. It would not resolve other potential objections that can only be assessed once the specific statements are identified. Individual statements may raise issues under Rule 403, for example, where the

6

probative value of a particular statement is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Individual statements may also contain hearsay within hearsay that requires independent analysis under Rule 805. And individual statements may implicate Confrontation Clause concerns depending on their testimonial character. None of these issues can be evaluated in the abstract. A ruling on the co-conspirator hearsay exception, even if favorable to the Government, would not constitute a ruling on full admissibility.

The problem of identification is compounded by the nature of the Government's anticipated proof. To the extent the alleged co-conspirator statements are contained in documentary exhibits already produced in discovery, the Government could readily identify them by exhibit number. It has not done so. To the extent the Government intends to elicit alleged co-conspirator statements through the testimony of witnesses at trial, the defense may not have access to those statements until Jencks Act material is produced, which under 18 U.S.C. § 3500 may not occur until after the witness testifies on direct examination. In either case, the defense cannot meaningfully evaluate or oppose the admissibility of statements the Government has chosen not to identify. Due process requires that Mr. Hung have a meaningful opportunity to be heard before the Court rules on the admissibility of evidence against him.

The Court should deny the Government's motion without prejudice. If the Government wishes to offer specific alleged co-conspirator or agent statements at trial, it should identify them, by exhibit number, declarant, date, and substance, so that the Court can conduct the required *Bourjaily* analysis and the defense can exercise its right to object on all applicable grounds.

**C. Mr. Hung Opposes the Preclusion of Expert Testimony (Government's Motion, Sections III and IV)**

To the extent co-defendant Guan opposes the Government's motion to preclude the expert testimony of Matthew Price and James Shanahan, Mr. Hung joins that opposition as applicable to his defense.

Mr. Hung separately notes that the preclusion of this testimony would prejudice his defense on the central disputed element in this case: knowledge. The Government must prove beyond a reasonable doubt that Mr. Hung knew the property involved in the charged transactions represented proceeds of unlawful activity. 18 U.S.C. § 1956(a)(1)(B)(i). Expert testimony contextualizing the Paxful marketplace, including its widespread legitimate use, its anonymity architecture, and the prevalence of gift-card trading, is directly relevant to what an ordinary participant on the platform would have understood about the transactions at issue. Similarly, expert testimony on chargeback rates and industry thresholds bears on whether the volume and pattern of Mr. Hung's transactions should have alerted him to illicit activity. Without this context, the jury would be left to evaluate the Government's knowledge case in a vacuum. To the extent the Court has concerns about the scope of the proposed testimony, those concerns can be addressed through limiting instructions, a pretrial proffer, or a Rule 104 hearing, rather than through categorical preclusion.

**D. The Government's Motion to Preclude Advice-of-Counsel Arguments Is Moot as to Mr. Hung (Government's Motion, Section V)**

The Government seeks to preclude both defendants from raising advice-of-counsel arguments absent satisfaction of the defense's formal requirements. As to Mr. Hung, this motion is moot.

The Government itself concedes that it "is unaware of any relevant attorney contact by Hung" and that Mr. Hung "did not have contact with Attorney-1, Attorney-2, or any other relevant attorney during the scheme." (Dkt. 149 at 72.) Mr. Hung has not noticed an advice-of-counsel defense. There is no factual predicate for the relief the Government seeks as to him.

To the extent the Government seeks a prophylactic order preventing Mr. Hung from referencing any attorney consultations that may arise at trial, including consultations by co-defendant Guan that may become relevant through the evidence, such relief is premature. The relevance of any such evidence will depend on what the Government introduces at trial and cannot be determined in the abstract. Mr. Hung reserves his right to address attorney-related evidence as it arises, including if the Government opens the door by introducing attorney communications involving co-defendant Guan or the entities in a way that implicates Mr. Hung's knowledge or state of mind, subject to the Court's rulings at trial.

**E. The Defense Is Entitled to Present Evidence of CCP Operations, Document Fabrication, and Mr. Hung's Beliefs and Motivations (Government's Motion, Section VI)**

The Government asks this Court to preclude "evidence or argument suggesting that the charges are improperly motivated" and to preclude "claims of religious or political persecution or other inflammatory religious or political controversies." (Dkt. 149 at 76.) The Government identifies several defense themes it seeks to exclude, including arguments that the prosecution was brought for domestic political purposes, that the case reflects religious or political persecution, and that there has been foreign "infiltration of the U.S. justice system." (Dkt. 149 at 76-77.)

To the extent the Government seeks to preclude arguments that the Department of Justice was improperly motivated in its charging decisions, Mr. Hung does not oppose. This Court resolved the selective prosecution motion in its January 21, 2026 Decision and Order (Dkt. 110), and Mr. Hung does not intend to relitigate that ruling before the jury. He does not intend to argue

that the prosecutors in this case acted in bad faith or that the jury should acquit because of DOJ's internal decision-making.

But the Government's motion sweeps far beyond that narrow proposition. It seeks to preclude all evidence of "alleged political and religious persecution," including evidence of CCP operations against Falun Gong practitioners and affiliated entities. (Dkt. 149 at 76-81.) That evidence is not about DOJ's motives. It is about the credibility and sufficiency of the Government's proof, the structure of the criminal activity at the center of this case, and the defendant's state of mind. As Mr. Hung's own motion in limine (Dkt. 148) expressly noted, the defense intends to address CCP context and the provenance of the Government's primary knowledge evidence. (Dkt. 148 at 5.) This opposition delivers on that stated intention.

To be clear, Mr. Hung does not seek categorical admissibility of all CCP or Falun Gong-related evidence. He seeks denial of categorical preclusion and context-specific rulings at trial, where the relevance of particular evidence can be assessed against the record as it develops. The evidence is admissible on each of the following independent grounds.

### 1. The Credibility of the Government's Evidence

The Government's case on knowledge turns heavily on the August 2020 complaint letter, a document the Government contends put Mr. Hung on notice that the prepaid cards he purchased were criminal proceeds. As this Court is aware from Mr. Hung's pending CIPA § 4 motion (Dkt. 157), the defense has identified specific linguistic, cultural, and forensic anomalies in that letter that are inconsistent with genuine Falun Gong practitioner authorship and consistent with the documented CCP modus operandi of fabricating complaints, the precise conduct for which CCP agents Chen Jun and Lin Feng were convicted in this District. (Dkt. 157 at 1, 4, 6.)

10

Chen Jun pled guilty in November 2024 to acting as an illegal agent of the PRC government and conspiring to manipulate the IRS Whistleblower Program to strip the tax-exempt status of a Falun Gong entity. On a recorded call, Chen explicitly stated that the purpose was to carry out the PRC Government's aim of "toppl[ing] the Falun Gong." (Dkt. 157 at 4.) The defense contends that the August 2020 complaint letter reflects the same pattern: a fabricated complaint designed to trigger government action against a Falun Gong-affiliated entity.

Evidence of CCP fabrication tactics is not evidence about DOJ's charging decisions. It is evidence bearing on whether the Government's key exhibit is what the Government claims it is. If the Government intends to rely on the complaint letter as evidence of knowledge, the defense must be permitted to test whether the letter was genuinely authored by the purported source. The Second Circuit has held that provenance and authorship are foundational admissibility questions, not mere weight arguments, when the exhibit's supposed origin is central to the Government's theory. *See United States v. Vayner*, 769 F.3d 125, 131-33 (2d Cir. 2014) (vacating conviction where Government failed to establish that a document was what it claimed it to be, rather than something created by someone other than the purported author). If the complaint letter was fabricated or seeded through CCP-linked channels, the Government's primary proof of knowledge is unreliable. The jury is entitled to hear evidence relevant to that determination.

The defense also intends to challenge the attribution of communications to Mr. Hung. The government's own exhibits contain messages from Mr. Hung's Facebook account in which the person messaging refers to "Boss Hung" in the third person and, in at least one instance, states that Boss Hung is offline while an assistant continues the conversation. This proves that multiple people had access to and used Mr. Hung's Facebook account. The government must establish that Mr. Hung personally authored each communication it attributes to him. Evidence that others used

11

his accounts is directly relevant to the credibility and reliability of the government's proof and cannot be excluded.

The Government's motion does not address this category of evidence. Section VI focuses on precluding arguments about prosecutorial motive and broad persecution narratives. It does not discuss the defense's challenge to the provenance and authenticity of specific Government exhibits. The defense's right to attack the credibility and reliability of the Government's evidence is fundamental and cannot be foreclosed by a motion in limine directed at a different issue.

### 2. The CCP's Role in the Criminal Supply Chain

The Government bears the burden of proving beyond a reasonable doubt that the prepaid cards Mr. Hung purchased represented proceeds of specified unlawful activity and that Mr. Hung knew they did. 18 U.S.C. § 1956(a)(1)(B)(i). Evidence about who actually controlled the upstream criminal activity, and how that activity was structured to conceal its origins from end users, is directly relevant to both elements.

As detailed in Mr. Hung's CIPA motion, ICE Director Caleb Lyons publicly stated in April 2026 that HSI "broke the largest gift card fraud case ever, and it was from transnational gangs within the CCP that were sending that money back to military units in China." (Dkt. 157 at 5.) DHS launched Project Red Hook, a dedicated task force targeting Chinese organized crime's role in gift card fraud, documenting more than $1 billion in fraud, over 150 arrests, and a supply chain involving "takers, tampers, placers, redeemers, and suppliers." (Dkt. 157 at 5.) Multiple DOJ prosecutions confirm that Chinese organized crime networks were a primary source of fraudulent gift cards on platforms like Paxful. (Dkt. 157 at 5.)

This evidence is relevant to the Government's case, not collateral to it. The Government must prove that the cards were proceeds of unlawful activity. Evidence that the gift card fraud

ecosystem was controlled by sophisticated CCP-linked transnational criminal networks, operating through a layered supply chain specifically designed to conceal the criminal origins of the cards from downstream purchasers, bears directly on whether an end user on Paxful could have detected those origins. The more sophisticated and concealed the criminal supply chain, the less plausible the inference that an ordinary buyer knew the cards were stolen. The Government cannot simultaneously rely on the existence of a massive, sophisticated criminal enterprise to establish the actus reus while asking the Court to prevent the defense from showing the jury how that enterprise was designed to deceive the very people the Government now charges with knowledge.

The government's own prosecution of Paxful reinforces this point. In that case, the government described Paxful buyers as victims of the platform's fraud, not as knowing participants. The government told the court that Paxful was designed to conceal the criminal origins of transactions from its users. The government cannot now take the inconsistent position that Mr. Hung, a Paxful buyer, was a knowing criminal when its own prior position was that Paxful buyers were victims of the platform's deliberate deception.

The CCP supply chain evidence and the Paxful platform evidence are two sides of the same coin: the upstream criminal networks generated the stolen cards, and the platform through which those cards were sold was specifically designed to conceal their origins from buyers. Together, they demonstrate a double layer of concealment that makes the Government's knowledge inference implausible.

The Second Circuit recently vacated a conviction on ~~precisely~~ a closely analogous evidentiary principle. In *United States v. Cardenas*, 167 F.4th 569 (2d Cir. 2026), the court held that the district court erred in excluding evidence corroborating the defendant's account of the operation's true purpose, because "intent was the central disputed issue at trial, and . . . the

13

excluded evidence bore directly on the credibility of [the defendant's] asserted understanding of the operation." *Id.* at 26-27. The court emphasized that a defendant "would lack the criminal intent required for conviction, even if he was acting improperly, unethically, or even illegally in some other respect," if the jury concluded he genuinely misunderstood the nature of the activity. *Id.* at 18. Evidence corroborating what Mr. Hung understood about the transaction environment and the threat model in which he operated is admissible under the same principle.

### 3. CCP Exploitation of This Prosecution

The CCP has designated Falun Gong as a primary target of its "legal warfare" doctrine. Xi Jinping personally ordered an escalation of anti-Falun Gong operations abroad in 2022 and placed the Ministry of State Security in charge, specifying two tactics: media warfare and legal warfare. (Dkt. 157 at 3.) The Tom Lantos Human Rights Commission has documented six CCP tactics targeting Falun Gong practitioners in the United States, including lawfare, media manipulation, and attempts to co-opt government agencies. (Dkt. 157 at 4.)

CCP state media has systematically weaponized this prosecution. CGTN, a registered foreign agent of the PRC government, published articles citing Mr. Guan's arrest and the $67 million money laundering allegation, then used that coverage to attack Falun Gong's media operations. (Dkt. 157 at 6.) Multiple CCP-affiliated outlets, including Sina Finance, China Anti-Cult Network, Chengde government anti-cult sites, and provincial government platforms, have amplified the prosecution in Chinese-language media targeting the diaspora community. (Dkt. 157 at 6.) Whatever the Government's intentions, this prosecution is furthering the CCP's stated objectives.

This evidence is relevant for two reasons. First, it corroborates the defense theory that the complaint letter was fabricated. The CCP has a documented motive to generate complaints against

14

Falun Gong entities, a documented capability to do so (as the Chen Jun and Lin Feng convictions demonstrate), and is actively exploiting this prosecution for propaganda purposes. The propaganda exploitation is evidence of motive to fabricate, not evidence of prosecutorial misconduct.

Second, the CCP's demonstrated efforts to influence U.S. law enforcement with false evidence are directly relevant to the sufficiency of the Government's proof. In *United States v. Michel*, No. 19-cr-00148 (D.D.C.), the Government itself alleged that the PRC's Ministry of State Security used intermediaries to "convince the Administration of the President of the United States and the United States Department of Justice to drop forfeiture proceedings and related investigations." (Dkt. 157 at 6.) The classified record in that case revealed that the MSS was using private individuals to influence the U.S. Government. (Dkt. 157 at 6.) Mr. Hung is not arguing that DOJ prosecutors knowingly participated in a CCP operation. He is arguing that a foreign adversary with a documented history of fabricating evidence against Falun Gong entities may have manufactured a document that found its way into the Government's case, and that the jury must be permitted to evaluate that possibility in assessing the Government's proof. Although *United States v. Allen*, 864 F.3d 63 (2d Cir. 2017), arose in the compelled-testimony context, it illustrates that where foreign-state conduct affects the provenance or reliability of evidence used in a U.S. criminal prosecution, the issue is not categorically irrelevant. *See id.* at 69-70, 99-103.

### 4. Mr. Hung's Knowledge and State of Mind

Evidence of Mr. Hung's Falun Gong practice, his understanding of CCP persecution, and his motivations for working with The Epoch Times and its affiliated entities is directly relevant to his knowledge and intent, elements the Government must prove beyond a reasonable doubt.

The Government itself acknowledges this. In its motion, the Government concedes that "the defendants' support for the Media Entities and the Spiritual Movement may be parts of their

15

motives to commit the charged offenses" and that such evidence "would be relevant, and thus admissible if presented in admissible form." (Dkt. 149 at 80-81.) The Government further acknowledges that "if a defendant testifies about what beliefs led him to take certain relevant actions," such evidence "might be properly admitted." (Dkt. 149 at 81 n.19.)

Mr. Hung agrees that his beliefs and motivations are relevant, but they are relevant to the defense, not just to the prosecution. The First Amendment "does not . . . prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993). The Second Circuit has consistently held that evidence of a defendant's beliefs and associations is admissible when offered to prove mens rea.

The knowledge element in this case carries a heightened burden that the government often conflates. For the conspiracy charge under 18 U.S.C. § 1956(h), the government must prove Mr. Hung "knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy." *United States v. Huezo, 546 F.3d 174, 180 (2d Cir. 2008)*. The conspiracy has two objects with different mens rea requirements. For the concealment object under § 1956(a)(1)(B)(i), the government must prove Mr. Hung knew the transactions were designed to conceal. For the § 1957(a) object, the government must prove Mr. Hung knew the property was criminally derived. These are separate elements requiring separate proof. *United States v. Odiase, No. 18-2235-cr, slip op. at 3 (2d Cir. 2019)*. Knowing that some gift cards may have problems is not the same as knowing the transactions were designed to conceal the source of criminal proceeds. Evidence of Mr. Hung's beliefs, motivations, and understanding of the transaction environment bears directly on whether he possessed the specific intent required for each object of the conspiracy.

16

In *United States v. Kaziu*, 559 F. App'x 32, 34-35 (2d Cir. 2014), the court held that "political beliefs were introduced to prove the mens rea element of the charged crimes" and were properly admitted with a limiting instruction. *See also United States v. Mostafa*, 16 F. Supp. 3d 236, 248-54 (S.D.N.Y. 2014) (evidence of ideological beliefs admissible to show "knowledge, motive, and intent"). This admissible evidence of a defendant's belief is not only at the discretion of the prosecution.

Mr. Hung's Falun Gong practice and his understanding of CCP operations against Falun Gong entities explain why he was involved with The Epoch Times, what he believed about the transactions at issue, and why he may not have interpreted the signals the Government relies on as evidence of criminal knowledge. This evidence is not offered as character evidence or to invite sympathy. It is offered to explain conduct and intent.

The government's concealment theory is contradicted by the most basic facts of this case. Every transaction was processed through merchant accounts bearing the names "THE EPOCH TIMES ASSOCIATION," "EPOCH PUBLIC FOUNDATION," "COMMUNITY SERVICE COALITION ORG," or "NTD." Every victim's bank statement displays the company name. Every dollar was processed through FDIC insured banks. No rational person trying to conceal the source of funds would stamp his company's name on every transaction. The Second Circuit has held that "absent proof of intent to conceal, an ordinary purchase made with ill-gotten gains does not violate the money laundering statute" and that an "open and notorious" purchase does not evidence intent to conceal. *United States v. Crozier, 640 F. App'x 100, 106 (2d Cir. 2016)*. Evidence of Mr. Hung's beliefs and motivations is necessary to explain why these transactions were conducted openly, not to justify them.

Additionally, the Government is expected to characterize Mr. Hung's operational security measures, such as the use of encrypted communications and compartmentalized accounts, as evidence of consciousness of guilt. Evidence that Mr. Hung was operating in Vietnam, one of the top three perpetrators of transnational repression in the world, where Falun Gong has been banned and practitioners have been imprisoned at the CCP's direction (Dkt. 157 at 4-5), provides an innocent explanation for those measures. Without this context, the jury would be left with only the Government's characterization, which is not consistent with the truth.

## 5. Proposed Safeguards

Mr. Hung recognizes the Court's legitimate interest in preventing the trial from becoming a forum for broad geopolitical debate. He is prepared to accept reasonable limitations, including a limiting instruction directing the jury that evidence of CCP operations and Mr. Hung's beliefs is admitted solely for its bearing on (a) the credibility and reliability of the Government's evidence, (b) the structure of the criminal supply chain, (c) the defendant's knowledge and state of mind, and (d) the context for the defendant's operational security measures; and that the jury is not to consider such evidence as bearing on the propriety of the Government's charging decisions. *See Kaziu*, 559 F. App'x at 35 (approving limiting instruction that defendant was "not on trial for having extremist religious views or political views").

Mr. Hung is also prepared to work with the Court and the Government to identify the specific categories of CCP-related evidence he intends to offer and to make proffers outside the jury's presence where appropriate, so that admissibility can be assessed on a concrete rather than abstract basis.

The Government's motion as to Section VI should be denied to the extent it seeks to preclude evidence of CCP document fabrication, CCP operations against Falun Gong, the CCP's

18

role in the gift-card fraud supply chain, CCP propaganda exploitation of this prosecution, and Mr. Hung's own beliefs and motivations. To the extent the Government seeks only to preclude arguments that DOJ prosecutors were improperly motivated in their charging decisions, Mr. Hung does not oppose.

**F. Mr. Hung's Background, Beliefs, and Circumstances Are Relevant to Knowledge and Intent (Government's Motion, Sections VII, VIII, and IX)**

The Government seeks to preclude evidence of punishment and collateral consequences (Section VII), good acts (Section VIII), and personal characteristics including family background, ethnicity, nationality, and health (Section IX).

Mr. Hung does not dispute the general principle that evidence of potential punishment is ordinarily inadmissible, and he does not intend to ask the jury to consider sentencing consequences. To the extent the Government seeks to preclude standard penalty-phase arguments during the guilt phase, Mr. Hung does not oppose.

However, the Government's remaining requests sweep too broadly. Mr. Hung's Falun Gong practice is not "good character" evidence offered under Rule 404(a)(2)(A), and Mr. Hung will not offer "I am a good person" evidence through specific acts unless otherwise independently admissible. His Falun Gong practice is direct evidence of his motivations, his relationship with The Epoch Times and affiliated entities, and his understanding of the transactions at issue. Similarly, Mr. Hung's Vietnamese nationality, his lack of English proficiency, and his personal circumstances are not irrelevant "personal characteristics." They are facts that bear on what he knew, what he understood, and how he interacted with the people and systems at the center of this case.

The Government cannot charge Mr. Hung with participating in a scheme involving a multinational media company affiliated with the Falun Gong movement and then preclude him

19

from explaining his connection to that movement. It cannot allege that he managed a team operating across international borders and then bar evidence of his nationality, language, and circumstances. These facts are not offered to generate sympathy. They are offered because they are relevant to the elements the Government must prove. If communications were made in English and Mr.Hung does not speak or read English, that is a relevant fact, crucial for the jury to make a determination as to the knowledge element.

Mr. Hung respectfully requests that the Court deny the Government's motion as to Sections VIII and IX, or at minimum reserve ruling until trial, when the relevance of specific evidence can be assessed in context. As to Section VII, Mr. Hung does not oppose to the extent it seeks to preclude evidence of potential punishment.

### III.CONCLUSION

For the foregoing reasons, Mr. Hung respectfully requests that the Court:

1. Deny the Government's motion as to self-authentication (Section I) without prejudice, and direct the Government to present the actual certifications for judicial review;

2. Deny the Government's motion as to alleged co-conspirator and agent statements (Section II) without prejudice, and require the Government to identify the specific statements, speakers, and exhibit numbers it seeks to admit;

3. Deny the Government's motion to preclude the expert testimony of Matthew Price and James Shanahan (Sections III and IV), to the extent co-defendant Guan opposes;

4. Deny the Government's motion as to advice-of-counsel arguments (Section V) as moot with respect to Mr. Hung;

5. Deny the Government's motion to the extent it seeks to preclude evidence of CCP operations, document fabrication, the CCP's role in the gift-card fraud supply chain, CCP

20

propaganda exploitation of this prosecution, and Mr. Hung's beliefs and motivations (Section VI), while not opposing the motion to the extent it seeks only to preclude arguments that DOJ prosecutors were improperly motivated;

6. Deny the Government's motion to preclude evidence of Mr. Hung's background, beliefs, and circumstances (Sections VIII and IX); and

7. Grant such other and further relief as the Court deems just and proper.

Dated: June 16, 2026

Respectfully submitted,

Timothy C. Parlatore
Parlatore Law Group, LLP
*Attorneys for Le Van Hung*
260 Madison Ave., 17th Floor
New York, New York 10016